IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TINA M. SUPPA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| MERCANTILE ADJUSTMENT | ) | **JURY TRIAL DEMANDED** |
| BUREAU LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Tina M. Suppa ("Ms. Suppa"), by her undersigned counsel, alleges, on knowledge as to herself and on information and belief as to all other matters, as follows:

### Introduction

1.      This is an action by an individual consumer for actual and statutory damages stemming from Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which prohibits debt collectors from engaging in unfair, deceptive, or abusive practices in collecting consumer debts.

### Jurisdiction and Venue

2.      This Court has subject matter jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the Defendant transacts business here and the conduct complained of occurred here.

**Parties**

4.      Plaintiff Tina M. Suppa is a natural person domiciled in the County of Erie and State of New York, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.      Defendant Mercantile Adjustment Bureau LLC ("Mercantile") is a domestic business corporation organized and existing under the laws of the State of New York with offices in the Village of Williamsville, County of Erie, State of New York.

6.      Mercantile regularly attempts to collect debts alleged to be due another, and is and has at all times pertinent hereto been a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

7.      The acts of Mercantile alleged hereinafter were performed by its respective employees acting within the scope of their actual or apparent authority.

8.      All references to "Mercantile" herein shall mean Mercantile or an employee thereof.

**Factual Allegations**

9.      In or around November 2009, Ms. Suppa's daughter, Madeline Suppa ("Madeline"), obtained emergency medical treatment from Kenmore Mercy Hospital and Buffalo Emergency Medical Associates LLP (collectively, the "Providers") on two separate occasions for adverse allergic asthmatic reactions.

10.      The obligations thereby incurred arose out of transactions in which money, services, or property, which was the subject of the transaction, was primarily for personal, family, and/or household purposes.  As such, they were "debts" as that term is defined by 15 U.S.C. § 1692a(5).

11.     Madeline was at that time 19 years old, and was covered under Ms. Suppa's health insurance.

12.     At intake at the hospital, Madeline provided her insurance information and a current billing address.

13.     The Providers failed to update their billing records to reflect the current address provided by Madeline.

14.     The Providers thus sent all bills concerning Madeline's medical treatment to an address (289 Nassau Avenue, Kenmore, New York) at which Madeline had not lived in more than ten years, which the Providers presumably obtained from records of previous treatment received by Madeline.

15.     The Providers submitted the charges for Madeline's care to Ms. Suppa's health insurer.

16.     Ms. Suppa's health insurer covered a portion of the charges submitted by the Providers.

17.     The Providers "balance billed" Ms. Suppa for the portion that was not covered.

18.     Those bills were sent to the invalid, more-than-ten-year-old address, and were not forwarded to Ms. Suppa.

19.     Ms. Suppa possessed secondary health insurance that would have covered all or some of the balance that was not paid by her primary health insurance.

20.     Sometime in or before July 2010, the Providers consigned, placed, or otherwise transferred the subject debts to Mercantile for collection from Ms. Suppa.

21.     Beginning in or around July 2010, Mercantile began attempting to collect the subject debts by means of letters and phone calls to Ms. Suppa.

22.     Mercantile contacted Ms. Suppa at her correct, current address, demonstrating that it was aware of her current address and that the more-than-ten-year-old address to which all prior bills had been sent was incorrect.

23.     Before turning the accounts over to collections, the Providers did not provide Ms. Suppa with the 30-day notice required by New York Public Health Law § 2807-k(9-a)(h).

24.     Mercantile commenced collection activity without ensuring that the 30-day notice was provided to Ms. Suppa.  Mercantile also failed to provide Ms. Suppa with any information concerning the Providers' financial assistance policies, as required by New York Public Health Law § 2807-k(9-a)(c), (h).

25.     Mercantile's failure to comply with the consumer-protection provisions of the New York Public Health Law was unfair and unconscionable in violation of various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692f.

26.     On or around September 25, 2010, Ms. Suppa spoke with Layala Smart, a debt collector employed by Mercantile, by telephone.  Ms. Suppa informed Ms. Smart that the subject debts were disputed, and requested validation of the subject debts.

27.     On October 13 and 15, 2010, in response to Ms. Suppa's request for validation of the subject debts, Mercantile mailed Ms. Suppa itemized statements of account, revealing to Ms. Suppa for the first time that the charges Mercantile was seeking to collect were for medical services to her daughter and that previous bills had all been sent to the more-than-ten-year-old address.

28.     Upon finally learning what the asserted charges were for, Ms. Suppa submitted the bills for payment by her secondary insurer, which denied coverage because of the more-than-one-year delay in submission following the provision of services.

29.     On December 9, 2010, at approximately 2:46pm, Mercantile phoned Ms. Suppa's daughter Madeline and discussed Ms. Suppa's alleged debts to the Providers with her. This violated various provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(2) and 1692c(b).

30.     Mercantile's call to Ms. Suppas's daughter did not have any purpose to obtain or confirm location information regarding Ms. Suppa.  Prior to December 9, 2010, Mercantile was in possession of such location information, and had used it to both call and write to Ms. Suppa.

31.     On or around January 9, 2011, Ms. Suppa mailed a letter to Mercantile in which she stated that she disputed the debts, informed Mercantile that its own itemized statement showed that the charges concerned her adult daughter and that all bills had been sent to a more-than-ten-year-old address, and demanded that Mercantile "cease and desist all collection efforts" and correct any prior reports of the debts to credit bureaus.

32.     Subsequent to Ms. Suppa's written demand to cease and desist collection efforts, Mercantile has continued to attempt to collect the debts through telephone calls and written communications.  This violated various provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(c) and 1692e and e(2).

33.     In particular, after receiving Ms. Suppa's written cease-and-desist demand, Mercantile sent Ms. Suppa a letter dated February 2, 2011, enclosing another itemized statement and demanding that she "remit the balance in full to this office immediately."

34.     In particular, after receiving Ms. Suppa's written cease-and-desist demand, Mercantile left voicemails concerning the subject debts on Ms. Suppa's cellular telephone on, among other dates and times, January 19, 2011, at 11:55am; January 25, 2011, at 2:21pm; February 3, 2011, at 10:08am; February 14, 2011, at 9:29am; March 15, 2011, at 8:18am; and March 31, 2011, at 5pm.

35.     In particular, after receiving Ms. Suppa's written cease-and-desist demand, Mercantile placed additional phone calls to Ms. Suppa without leaving messages. These phone calls placed by Mercantile, with and without messages, violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692d and 1692d(5).

36.     In none of its communications with Ms. Suppa, including its putative "validations" of the alleged debts, has Mercantile ever provided any explanation as to how Ms. Suppa could be liable for her adult daughter's medical care.  Mercantile's assertion of such liability by Ms. Suppa misrepresented the nature, character, and legal status of the debt in violation of various provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692f(1) and 1692e(2).

37.     In none of its communications with Ms. Suppa, including its putative "validations" of the alleged debts, has Mercantile ever provided any information as to how the accounts could have become past due before a bill had ever been sent to the billing address. Mercantile's assertion that the accounts were past due misrepresented the nature, character, or legal status of the debt in violation of various provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692f(1) and 1692e(2).

38.     Ms. Suppa has suffered actual damages as a result of Mercantile's illegal collection communications with herself and her daughter, in the form of anger, anxiety,

emotional distress, frustration, upset, humiliation, embarrassment, amongst other negative

emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## COUNT
## (Violation of Fair Debt Collection Practices Act)

39.     Ms. Suppa repeats and realleges paragraphs 1 through 38 of his Complaint

as though fully set forth in this paragraph.

40.     The conduct of Mercantile as described in the Complaint violated

15 U.S.C. §§ 1692b(2) and 1692c(b) in that Mercantile contacted a third party and discussed the

debt allegedly owed by Ms. Suppa with that third party, with no purpose of obtaining location

information about Ms. Suppa.

41.     The conduct of Mercantile as described in the Complaint violated

15 U.S.C. §§ 1692d and 1692d(2) in that Mercantile caused Ms. Suppa's phone to ring

repeatedly after being informed in writing and orally that the debt was disputed and was not

owed, and requested in writing and orally to cease all contact, and thereby harassed, abused, and

annoyed Ms. Suppa.

42.     The conduct of Mercantile as described in the Complaint violated

15 U.S.C. § 15 U.S.C. §§ 1692c(c), in that Mercantile contacted Ms. Suppa about the alleged

debt repeatedly after being requested in writing to cease and desist all such contacts.

43.     The conduct of Mercantile as described in the Complaint violated

15 U.S.C. §§ 1692f(1) and 1692e(2), by misrepresenting the character, nature, and/or legal status

of the alleged debt, and in particular, that it was past due and owed by Ms. Suppa.

44.     The conduct of Mercantile as described in the Complaint was unfair and

unconscionable in violation of 15 U.S.C. § 1692f in that Mercantile engaged in collection

activities without complying with, or ensuring compliance with, the consumer-protection

provisions of Section 2807-K(9-a) of the New York Public Health Law.

45.    Ms. Suppa has suffered actual damages as a result of Mercantile's illegal

collection communications with herself and her daughter, in the form of anger, anxiety,

emotional distress, frustration, upset, humiliation, embarrassment, amongst other negative

emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

**Jury Demand**

46.    Ms. Suppa demands a trial by jury in this action.

**Prayer for Relief**

WHEREFORE, Plaintiff Tina M. Suppa respectfully demands that the Court enter

judgment against Defendant for:

A.    An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

B.    An award of statutory damages of $1,000 pursuant to 15 U.S.C.

§ 1692k(a)(2)(A);

C.    An award of costs, disbursements, and reasonable attorneys' fees pursuant

to 15 U.S.C. §§ 1692k(a)(3);

D.    Interest on the aforementioned judgments; and

      E.     Such other and further relief as this Court may deem just and proper.

Dated: Buffalo, New York
     May 19, 2011

 

          _____

          Matthew A. Parham
          Law Offices of Matthew A. Parham
          70 Niagara Street, Suite 210
          Buffalo, New York  14202
          (716) 218-8876
          matthew@matthewparhamlaw.com
          *Attorney for Plaintiff Tina M. Suppa*

## **VERIFICATION**

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF ERIE         )

TINA M. SUPPA, being duly sworn, deposes and says:

1.  I am the Plaintiff in this civil proceeding.

2.  I have read the above-entitled Complaint and Demand for Jury Trial prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3.  I believe that this Complaint and Demand for Jury Trial is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4.  I believe that this Complaint and Demand for Jury Trial is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5.  I have filed this Complaint and Demand for Jury Trial in good faith and solely for the purposes set forth in it.

Tina M. Suppa

Sworn to before me this
19th day of May, 2011

Notary Public

JUDITH A. GROAT
Notary Public, State of New York
No. 5000396
Qualified in Niagara County
Commission Expires August 17, 20[1]